[4]

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FOUR SEASONS PRODUCE, INC., | : | |
| | : | Civil Action No. 05-4921 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JERSEY BANANA CO. AND ALEX ABDALLA, | : | OPINION |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

Plaintiff Four Seasons Produce, Inc. ("Plaintiff" or "Four Seasons") seeks an entry of default judgment against Defendants Jersey Banana Co. ("Jersey Banana") and Alex Abdalla ("Abdalla") (Collectively "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). Defendants were properly served with a Summons and Complaint on October 31, 2005, but have yet to participate in the case in any fashion.  The Clerk entered default on December 14, 2005. This Court has jurisdiction pursuant to  7 U.S.C. § 499e(c)(5) and 28 U.S.C. §§ 1331, 1367.

**I. BACKGROUND**

Plaintiff alleges that it sold and delivered to Jersey Banana $19,606.25 worth of produce between July 22, 2005 and August 19, 2005.  According to Plaintiff, Abdalla is an officer, director and principal shareholder of Jersey Banana and signed an agreement personally guaranteeing Jersey Banana's obligations, which is attached as Plaintiff's exhibit 3.  Plaintiff alleges that Defendants accepted the produce but failed and refused to pay to Plaintiff any portion

of the $19,606.25 due, in violation of statutory, regulatory, contractual duties to preserve and turnover the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e, ("PACA") trust assets belonging to Plaintiff.   Plaintiff filed its Complaint against Defendants on October 11, 2005. The docket reflects that Defendants Jersey Banana and Abdalla were served with the Summons and Complaint on October 31, 2005, and, as such, had until November 20, 2005 to file a timely Answer; neither did so.  The docket also reflects that on December 14, 2005, the clerk entered default against Jersey Banana and Abdalla.  On March 24, 2006, Four Seasons filed a motion for default judgment against Defendants  pursuant to Federal Rule of Civil Procedure 55(b)(2). Jersey Banana and Abdalla have not opposed the motion and have yet to participate in the case in any fashion.  On July 10, 2006, this case was transferred from the Honorable Stanley R. Chesler, U.S.D.J., to me.

## II.  DISCUSSION

### A. Default Judgement Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. <u>Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.</u>, 922 F.2d 168, 177 n. 9 (3d Cir.1990) ("When a defendant fails to appear ..., the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  To obtain a default judgment, a litigant must first obtain an entry of default from the clerk of the court pursuant to <u>Fed. R. Civ. P.</u> 55(a).  In this case, the Clerk entered default on December 14, 2005.   After that procedural hurdle has been met, the entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have

2

repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v.. Woma Corp., 732 F.2d 1178, 1181 (3d Cir.1984) (citations omitted).

**B.  Cause of Action**

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir .1990); Directv, Inc. v. Asher, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed.1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, Miller, & Kane, § 2688, at 63); Directv, Inc. v. Croce, 332 F.Supp.2d 715, 717 (D.N.J.2004)).

The purpose of PACA was "primarily to eliminate unfair practices in the marketing of perishable agricultural commodities in interstate commerce in the case of a declining market by making it difficult for unscrupulous persons to take advantage of shippers by wrongful rejection of the goods upon arrival at a point where it is expensive and impractical for the shipper to enforce his legal rights." Martinelli & Co., Inc. v. Simon Seigel Co., 176 F.2d 98, 100 (1st Cir.1949). See 7 U.S.C. § 499e(c)(1). Among other things, PACA requires "licensing of all entities qualifying as commission merchants, dealers, and brokers (buyers); bars a variety of unfair trade practices by buyers; and provides various remedies when violations occur." Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y., 362 F.3d 33, 36 (2d Cir.2004)(internal citations omitted). "PACA requires buyers to make 'full payment promptly' for all commodities received

3

from produce sellers." Id. ( citing 7 U.S.C. § 499b(4)). Accordingly, PACA provides for the creation of a statutory trust whenever produce is delivered and unpaid by the buyer.  The supplier of produce becomes a beneficiary of said statutory trust which is a "non-segregated floating trust" that applies to all of the buyer's produce in inventory and all proceeds from the sale of produce until full payment is made. Essentially, the trust comprises: (1) produce purchased from suppliers, (2) all inventories of foods or other products derived from the produce, and (3) receivables or proceeds from the sale of said produce. In re Magic Rests, Inc., 205 F.3d 108, 111 (3d Cir.2000); Hiller Cranberry Prods., Inc. v. Koplovsky, 165 F.3d 1, 4-5 (1st Cir.1999). To this end, the PACA provides that:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.
> 7 U.S.C. at 499e(c)(2).

Thus, since Plaintiff alleges that it delivered produce that Defendants accepted but for which they failed to pay, Plaintiff has stated a cause of action for failure to pay trust funds, failure to pay for goods sold, and unlawful dissipation of trust assets against the corporate officials. See Am. Banana Co., 362 F.3d at 38.

**C. Emasco Factors**

In addition, to assess whether entry of a default judgment is appropriate, the Court must also consider three factors: (1) whether plaintiff will be prejudiced if default is not granted, (2)

4

whether defendant has a meritorious defense, and (3) whether defendant's delay was the result of culpable misconduct. Carpenters Health & Welfare Fund v. Naglak Design, 1995 WL 20848 *2 (E.D.Pa.1995) (citing Emasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir.1987); Hritz, 732 F.2d at 1181) (granting default judgment in a case similar to that at bar, for failure to submit remittance reports and pay contributions to funds as required by collective bargaining agreement). However, where the Defendants have not filed any responsive pleadings or otherwise shown cause why default judgment should not be granted in Plaintiff's favor, the Court is "not in a position to judge whether the Defendant has a meritorious defense or whether any delay was the result of culpable misconduct." Id. Therefore, because Defendants have not made any appearance in this matter, the remaining question for the Court is whether the Plaintiff will be prejudiced if default is not granted. Id.

In this situation, Plaintiff will have no means of vindicating its claims against Defendants unless default is granted. Plaintiff has pursued its claims through appropriate channels while Defendants have not responded to Plaintiff's pleadings in this matter or provided any defense to Plaintiff's claims.  See Asher, 2006 WL 680533 *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default"). Moreover, Defendants' failure to make the payments for the produce is a drain on the Plaintiff's assets, as is continued litigation in a case where the Defendants choose not to participate. See Carpenters Health, 1995 WL 20848 *2 (E.D. Pa.1995) (finding that failure to make timely payments to plaintiff multi-employer benefit fund prejudices plaintiff).  Because Plaintiff has no other means of pursuing its claims against Defendants, it will be prejudiced if default is not granted. Accordingly, the relevant Emasco

factors recommend that entry of default judgment is appropriate. Since Plaintiff's uncontested allegations state causes of action under PACA and the common law and the relevant Emasco factors counsel in favor of granting Plaintiff's motion, this Court will grant Plaintiff's motion for default judgment against Defendant.

**D.  Pre-Judgment Interest, Attorneys' Fees and Costs**

Plaintiff also seeks an award of attorneys' fees and costs and interest at "the prevailing bank prime rate plus (1%) added to the unpaid balance after 30 days," as set forth in the Credit Agreement entered into by Four Seasons and Jersey Banana and Abdalla's guarantee.  Pl.'s Ex. 3. PACA does not limit the recovery of a seller, supplier, or agent to only the cost of the commodity itself. Pacific Intern. Marketing, Inc. v. A & B Produce, Inc., 04-3399, 2006 WL 2493494, *5 (3d Cir. August 30, 2006).   Indeed, Congress "chose to allow 'full payment of the sums owing in connection with [commodities] transactions,' [which] unambiguously encompasses not only the price of commodities but also related expenses." Id. (quoting  Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir.2004) (per curiam) (emphasis in 11th Circuit decision) (quoting 7 U.S.C. § 499e(c)(2)). Thus, a PACA beneficiary also may recover expenses and fees that are due contractually or otherwise "in connection with" the transaction that is the subject of the PACA trust claim. Id.  Such expenses and fees include attorneys' fees and interest because there exists a contractual right to such fees, and thus the fees are "within the scope of the statute's protection of full payment owing in connection with the PACA transaction." Id.;  see also Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1223-24 (9th Cir.2002)("It is unlikely that Congress, in enacting a statute to provide better insolvency

remedies to perishable agricultural commodities sellers, wanted selectively to exclude legitimate portions of a covered contract from the scope of a PACA claim."). As such, given the facts of the case and since Defendants have failed to appear or defend in this action and failed to otherwise raise any substantial legal issue, the Court finds that Plaintiff is entitled to recover its contractually bargained for interest and attorneys' fees as sums owing in connection with the relevant produce transactions. Plaintiff has used 6.5% as the prevailing bank prime rate, which I deem reasonable and appropriate. Since Plaintiff is entitled to interest at the prevailing bank prime rate plus an additional one percent, as set forth in the Credit Agreement and Abdalla's guarantee, Plaintiff has calculated the interest due at a rate of 7.5 %. Thus, because 352 days have passed since September 18, 2005 and the principal is 19,606.25, I shall award Plaintiff interest in the amount of $1,418.09.

  Plaintiff has submitted affidavits of two attorneys in support of its request for fees and costs. David J. Fassett, Esq., of the firm Arseneault Fassett & Marino in Chatham, New Jersey, avers that he worked on this matter for Plaintiff and billed his time at an hourly rate of $250, which he maintains is less than his normal $325 per hour rate. David J. Fassett swears that he has nineteen years of experience as a practicing attorney and that the reduced hourly rate is reasonable. Mary Jean Fassett, Esq., of the Washington, D.C. law frm of McCarron & Diess, avers that she worked on this case and billed her time at a rate of $295 per hour. She swears that she has worked on PACA matters since 1994 and is familiar with the rates charged by other attorneys of similar practice and tenure, and believes her $295 hourly rate to be a reasonable and fair one. Both affidavits also contain charts and timesheets which provide the date, time spent, and description of all services rendered. Additionally, Plaintiff seeks costs in the amount of

$250.00 to cover the filing fee.  Currently, there is no objection nor evidence before the Court challenging the reasonableness of the fees and costs requested.  The Court has reviewed the affidavits, charts and timesheets and finds that an award of attorneys' fees and costs is appropriate and that the amounts requested are reasonable. Consequently, the Court will award attorneys' fees and costs in the requested amount of $3,948.89.

**III.  CONCLUSION**

      For the reasons set forth above, Plaintiff's motion for default judgment is granted.

                                          /s/ Freda L. Wolfson
                                        FREDA L. WOLFSON, U.S.D.J.

Date: September 5 , 2006